**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-02506-CMA-NYW

MILTON J. WEINSTEIN,

      Plaintiff,

v.

STEVEN WOITTE, Food Service Director, Airmark Food Service,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND ORDER

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on Defendant Steven Woitte's ("Defendant" or "Mr. Woitte") Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"). [#45, filed April 2, 2018]. This matter was referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated January 11, 2018, [#12], and the memorandum dated April 3, 2018, [#46]. This court has reviewed the Motion to Dismiss and associated briefing, the case record, and the applicable case law, and for the reasons set forth below respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

      Plaintiff Milton Weinstein ("Plaintiff" or "Mr. Weinstein") initiated this action on October 16, 2017, by filing a *pro se* Prisoner Complaint pursuant to 42 U.S.C. § 1983 claiming he had been denied a kosher diet. *See generally* [#1]. Mr. Weinstein was within the custody of the Larimer County Sheriff and was housed at the Larimer County Detention Facility ("LCDF") in Fort Collins at the time he filed his Complaint. The court

granted Mr. Weinstein leave to proceed in *forma pauperis* under 28 U.S.C 1915, [#6], and, pursuant to that statute, ordered him to file an amended pleading. *See* [#7]. Mr. Weinstein subsequently filed an Amended Complaint asserting one claim for violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). [#10].

In his Amended Complaint, Mr. Weinstein named as defendants Mr. Woitte, food service director and representative of Airmark,[1] as well as C.O. Dumell, lead supervisor, and Bret Richard, Chaplin. Mr. Weinstein alleges generally that the food at LCDF was "not certified kosher diets recognized by a Rabbi or anyone of Jewish Religion," and that LCDF personnel "[t]herefore had me engage in a diet that did not adhere to my religious belief." [*Id.* at 4]. Mr. Weinstein also alleges that Mr. Woitte is "[t]he main person responsible," and, specifically, "responsible for ordering the kosher diet, and making sure it's certified kosher," and that Mr. Woitte "can't provide proof from a Rabbi or a certification that he is serving a kosher diet, he just mixes up different servings and calls it kosher," and he "serves hot food on Shabot (the Sabith) which is not allowed in the Jewish Religion."[2] [*Id.* at 5]. Mr. Weinstein asks for $25,000 in damages, but does not seek any injunctive relief. Following its review of the Amended Complaint under § 1915(e)(2) and Local Rule 8.1, the court ordered that the matter be reassigned to the Honorable Christine M. Arguello, who referred the case to the undersigned Magistrate Judge for pretrial management. *See* [#11, #12].

---

[1] Plaintiff originally named Defendant as Steven Worlle. The court noted the incorrect spelling of Defendant's name during a Status Conference and directed the Clerk of the Court to amend the caption to reflect Defendant as Steven Woitte. *See* [#51].

[2] Where the court directly quotes from Plaintiff's papers, it maintains the spelling, punctuation, and grammar used by Plaintiff without correction or the use of [sic].

On April 2, 2018, Mr. Woitte filed the pending Motion to Dismiss, arguing that he is not a state actor and that monetary damages are not available under RLUIPA. *See* [#45]. Two days later, this court held a Status Conference at which the undersigned discussed, among other things, the filing of Defendant's Motion to Dismiss, Plaintiff's new mailing address, and the indication on the docket that the U.S. Marshal Service had been unable to locate and serve C.O. Dumell and Bret Richard. *See* [#51]. Plaintiff did not object to the dismissal of Dumell and Richard, and the court memorialized the voluntary dismissal under Federal Rule of Civil Procedure 41(a) in a subsequently issued Minute Order. *See* [#52]. [3] Thus, the case proceeds with Mr. Woitte as the sole Defendant.

Plaintiff did not respond to the Motion to Dismiss, and review of the docket dating from the Status Conference, at which time Mr. Weinstein provided the court with an updated address, does not reveal that any mail has been returned as undeliverable. In addition, during the Status Conference, the court specifically discussed the instant Motion with Plaintiff and advised him that his response was due no later than May 2, 2018. The Motion is ripe for resolution, *see* Local Rule 7.1(d), and the court addresses Defendant's arguments below.

---

[3] Prior to the Status Conference, an order from the court had been returned as undeliverable. *See* [#50]. Two weeks after the Status Conference was held, another order that the court had mailed prior to the Status Conference was also returned as undeliverable. *See* [#54]. The court then re-sent the orders relating to the Motion to Dismiss, the Notice of Entry of Appearance for counsel for Defendant, the Courtroom Minutes, and the Minute Order reflecting the voluntary dismissal of Defendants Dumell and Richard to Mr. Weinstein at his updated address. *See* [#53]. That mailing was not returned as undeliverable.

**LEGAL STANDARDS**

**I.     Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-plead factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plausibility refers to the "scope of the allegations in a complaint: if they are so general that they encompass wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Oklahoma v. Robbins*, 519 F. 3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Oklahoma* 519 F. 3d at 1247 (quoting *Bell Atlantic Corp.* 127 S.Ct. at 1965). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal proposed theory." *Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007).

**II.     *Pro Se Litigants***

Mr. Weinstein is appearing *pro se*, and thus the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standard than formal pleadings drafted by lawyers"). However, the court's role is not to act as the Plaintiff's advocate. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). In this District, failure to respond to a motion to dismiss is not deemed as consent to its entry. *Gatrell v. City & Cty. of Denver*, No. 10-CV-02311-REB-KLM, 2012 WL 219434, at *1 (D. Colo. Jan. 23, 2012). In any event, when dealing with a *pro se* plaintiff, the Tenth Circuit has stated its preference for resolution of the substance of a motion to dismiss despite the *pro se* plaintiff's failure to respond. *Id.* (citing *Persik v. Manpower, Inc.*, 85 F. App'x 127, 130 (10th Cir.2003) (unpublished decision)), *report and recommendation adopted*, No. 10-CV-02311-REB-KLM, 2012 WL 592889 (D. Colo. Feb. 22, 2012).

**ANALYSIS**

As discussed above, Mr. Weinstein's sole claim arises under RLUIPA. The purpose of RLUIPA is to "protect[] institutionalized persons who are unable freely to attend their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA provides in relevant part that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C § 2000cc-1(a).[4] *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010). Under RLUIPA, "[a] person may assert a violation of this chapter as claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). *See also Stewart v. Beach*, 701 F.3d 1322, 1333 (10th Cir. 2012). RLUIPA defines "government," in relevant part, as "(i) a State, county, municipality, or other governmental entity under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under the color of State law. 42 U.S.C § 2000cc-5(4)(A)(i)-(iii). *See also Stewart*, 701 F.3d at 1333. RLUIPA "does not provide a cause of action against individual defendants in their individual capacities." *Stewart*, 701 F.3d at 1334-35.

Defendant argues first that the claim fails because Plaintiff does not allege that he acted under the color of state law or at the behest of the State. [#45 at 2]. Defendant also argues that the claim fails because he is sued in his individual capacity and because monetary damages are not available as redress under RLUIPA. [*Id.* at 3]. This court addresses first the arguments regarding capacity and monetary damages.

## I.     Individual versus Official Capacity and Monetary Damages

### A.     Individual Capacity

Plaintiff does not specify whether he sues Mr. Woitte in his individual capacity, official capacity, or both. *See* [#10]. Defendant contends he is sued in his individual

---

[4] RLUIPA targets only two areas for protection: land use (section 2 of the Act, 42 U.S.C. § 2000cc) and the religious exercise of institutionalized persons (section 3 of the Act, 42 U.S.C. § 2000cc–1). Plaintiff's allegations implicate section 3.

capacity and for support cites pages of the Amended Complaint, presumably for the absence of language demonstrating an official capacity suit. *See* [#45 at 3, 6 (citing #10 at 1, 2, 3, 5, 8, 13)]. To the extent Plaintiff sued Mr. Woitte in his individual capacity, such claim cannot proceed under RLUIPA. *Stewart v. Beach,* 701 F.3d at 1334.

### B. Official Capacity

However, despite Defendant's arguments to the contrary, it is not at all clear that Plaintiff sues Defendant in his individual capacity only. As Defendant notes in his Motion, when asked whether each Defendant was "acting under the color of state law," Mr. Weinstein checks "no." *See* [#10 at 2]. With respect to Defendant Woitte, Mr. Weinstein notes that he was "not allowing me to have a certified kosher diet 'approved kosher diet' from an outside serce." [*Id.*]. However, in other sections of the Amended Complaint, Plaintiff states that the "jail" failed to serve him a Kosher diet, [*id.* at 3], and he appears to refer to Defendant and the former co-defendants and the "jail" interchangeably. *See* [*id.* at 4 ("After asking the jail several times to show me who certifies these kosher diets they were unable to provide proff stating in fact that these were in fact 'certified kosher' diets.")]. Simply put, it is not clear that Plaintiff understands the meaning of "acting under the color of state law," and the court is required to liberally construe a *pro se* litigant's pleadings. Accordingly, this court construes Mr. Weinstein's Amended Complaint as pleading a claim against Defendant Woitte in his individual and official capacities.[5]

### C. Damages Under RLUIPA

---

[5] Even if this court were to recommend dismissing the action on the basis that Plaintiff specified that Defendant was not "acting under the color of state law," it would recommend dismissal without prejudice, and, under Federal Rule of Civil Procedure 15(a), Plaintiff would likely be entitled to amend his pleading to specify that Defendant Woitte is sued in his official capacity.

The matter of whether RLUIPA provides for monetary damages is more nuanced than Defendant suggests.  In a 2011 decision, the Supreme Court resolved a split of authority amongst the circuits regarding whether the phrase "appropriate relief" as used in RLUIPA encompasses monetary damages.  *See Sossamon v. Texas*, 563 U.S. 277, 292-93, 131 S.Ct. 1651 (2011) (abrogating *Smith v. Allen*, 502 F.3d 1255, 1270 (11th Cir. 2007) (concluding that the phrase "appropriate relief" in section 3 of RLUIPA, was "broad enough to encompass the right to monetary damages," thus disagreeing with *Boles v. Neet*, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005) and similar cases that had found that monetary damages are not available under RLUIPA)).  However, the Supreme Court limited its ruling as follows: "We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."  *Id.* at 293.  Accordingly, money damages are not available to plaintiffs suing states, or state employees in their official capacity, under RLUIPA.

But, it is not clear that State sovereign immunity applies to Mr. Woitte to bar monetary damages under RLUIPA, because to the extent he acted at the behest of a governmental entity, the entity would be a county and not a state.  *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900 (1997) ("It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities," and "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit...").  "[T]he question whether a

particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law," which can be answered "only after considering the provisions of state law that define the agency's character." *Id.* at 430, n.5. Defendant did not argue application of Eleventh Amendment immunity, and the court declines to raise it *sua sponte* at this time. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (observing that "a court may raise the issue of Eleventh–Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so") (citations omitted*). Accord Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 394 (1998) (Kennedy, J., concurring) (*citing Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 515, n.19 (1982)).

Since *Sossamon*, at least one other court in this District has found that nominal monetary damages were available to a plaintiff who claimed a RLUIPA violation while held in custody at LCDF. *See Woodstock v. Shaffer*, No. 15–cv–00041–REB–KMT, 2015 WL 13614123, at *4-5 (D. Colo. Sept. 24, 2015) ("Defendants have provided the court with no law, and the court has not found any, regarding the unavailability of money damages under RLUIPA in a suit against a county defendant sued in his or her official capacity"), *adopted by* 2016 WL 183633 (D. Colo. Jan. 14, 2016), *clarified by* 2016 WL 369559 (D. Colo. Feb. 1, 2016). *See also Woodstock v. Shaffer*, No. 15–cv–00041–REB–KMT, 2016 WL 8737190, at *1 n.1 (D. Colo. Feb. 5, 2016) (summarizing that nominal and punitive damages under RLUIPA remained), *adopted by* 169 F. Supp. 3d 1169 (D. Colo. 2016). *But see Said v. Teller Cty.,* No. 14-CV-02745-RPM, 2015 WL 1598098, at *5 (D. Colo. Apr. 9, 2015). Other circuits that have considered the issue after *Sossaman* have

9

found that money damages are available under RLUIPA against political subdivisions of the states, such as municipalities and counties. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 290 (5th Cir. 2012); *Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1168–69 (9th Cir. 2011) (holding that municipalities and counties may be liable for money damages under RLUIPA); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260–61 (3d Cir. 2007) (same); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568 (1977) (recognizing that political subdivisions of states do not enjoy Eleventh Amendment immunity).

Amidst facts very similar to the ones presented here, the *Woodstock* court found that the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), operated to limit the plaintiff to nominal damages where he had not alleged any injury as a result of the claimed RLUIPA violation. The PLRA states, in pertinent part, "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). However, the PLRA does not bar recovery of nominal damages where no physical injury is alleged. *See Searles v. Van Bebber*, 251 F.3d 869, 878–79, 880–881 (10th Cir. 2001) (nominal and punitive damages available absent a showing of actual injury). As with the plaintiff in *Woodstock*, Mr. Weinstein does not allege any physical injury attendant to the claimed RLUIPA violation. *See* [#10]. Thus, reserving the issue of sovereign immunity, should Plaintiff establish a violation of RLUIPA, he would be entitled to nominal damages only. With this in mind, the court turns to Mr. Woitte's argument that Plaintiff fails to allege he acted at the behest of a governmental entity.

## II.    Government Actor

The relevant test for state action asks whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295, 121 S.Ct. 924, 930 (2001)) (citation and internal quotation marks omitted).    "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Woodstock*, 169 F. Supp. 3d at 1171 (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988)) (citation and internal quotation marks omitted). *See also Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786  (1982) ("The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.").[6]

Defendant argues that "Plaintiff has not alleged that Defendant Woitte acted under the color of state law, or that he was otherwise acting at the behest of the State," and that Defendant acted only "in the course of his private employment with Aramark."  [#45 at 2, 5].  For support, Defendant cites *Strope v. Cline*, No. 07-3254-SAC, 2010 U.S. Dist. LEXIS 144521, at *8, *13 (D. Kan. Mar. 18, 2010), which granted a Rule 12(b)(6) motion to dismiss a RLUIPA claim in favor of a kitchen line supervisor and kitchen manager who were employed by Aramark Correctional Services, LLC on the basis that those

---

[6] Defendant agrees that the "under the color of state law" analysis within the context of a § 1983 claim is equally applicable to Plaintiff's RLUIPA claim.  [#45 at 4, n.3].

defendants were employees of a private corporation and not state employees. However, I find the reasoning in the *Woodstock* case more persuasive for the purposes of this Recommendation.

In *Woodstock*, in recognizing that prisoners have a constitutional right to a diet conforming to their religious beliefs, *see Beerheide v. Suthers,* 286 F.3d 1179, 1185 (10th Cir. 2002), the Magistrate Judge observed that the defendant's role as food service director at the jail was based on a government contract to provide services that the governmental entity was constitutionally obligated to provide. *Woodstock*, 2016 WL 8737190 at *3. The *Woodstock* court distinguished *Strope* on the basis that *Strope* relied in part on *Blum v. Yaretsky*, 457 U.S. at 993, which involved a "class of Medicaid patients challenging decisions by the nursing homes in which they reside[d] to discharge or transfer patients without notice or an opportunity for a hearing," and observed that a private nursing home was materially different from a correctional facility, "where the state is responsible for providing needed services, such as food and medical care, to inmates." 2016 WL 8737190 at *2. The *Woodstock* court found greater analogous circumstances in *West v. Atkins*, where, in the context of a prison, the Supreme Court held that a physician under contract with the state to provide essential medical services to state prisoners was "acting under color of state law for purposes of § 1983 ...[and that] such conduct is fairly attributable to the State." *Id.* at *3 (quoting *West*, 487 U.S. at 54). *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 n.3 (10th Cir. 1995) (observing that the *Atkins* court did not expressly undertake any of the four state action inquiries recognized in the Tenth Circuit, "but instead concluded that the physician was clothed with the authority of state law," and that he was "a person who may fairly be said

to be a state actor," reasoning that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.") (citations and internal quotation marks omitted). *See also* 1 Martin A. Schwartz, Section 1983 Litigation: Claims & Defenses § 5.6, at 262 (4th ed. 2018) (concluding that the holding of *Atkins* is based upon "a unique coalescing of factors, namely, (1) the provision of services, pursuant to state contract, which the state is constitutionally obligated to provide, (2) in a state facility, (3) to individuals having no other access to those services, and (4) under the heavy influence of state authority").

In adopting the Magistrate Judge's recommendation in *Woodstock*, the court agreed that Aramark is a governmental actor, based on the fact that the county jail had "delegated its constitutional responsibility to provide adequate nutrition that complies with prisoners' religious requirements," and found support for its decision in the "overwhelming majority of federal courts" that had similarly concluded that Aramark is a governmental actor when acting in such a capacity. *Woodstock*, 169 F. Supp. 3d at 1170 (collecting cases, and observing that, with the exception of two cases, "every case this court has located confirms that employees of a private corporation which provides services traditionally provided by the state may themselves be liable for putative constitutional violations").[7] The court determined, under the applicable state action test, that there existed a nexus between the challenged conduct and the State, and thus the defendant was properly considered a state actor and his alleged violations of plaintiff's rights in that regard were actionable. *Id.* at 1171.

---

[7] The exceptions are *Strope* and *Harrison v. Richardson,* No. 09–3050–SAC, 2009 WL 735128 (D. Kan. March 19, 2009).

I agree with the reasoning set forth in *Woodstock*, and consider Plaintiff's allegations with respect to whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brokers' Choice of America, Inc.*, 757 F.3d at 1143. Plaintiff asserts that he is Jewish and alleges that Defendant worked for Aramark as the Food Service Director, was responsible for ordering and preparing the food served at LCDF, was responsible for ensuring that food was certified as Kosher, and that he denied Plaintiff a Kosher diet and served hot food on the Sabbath, in contravention of the teachings of Plaintiff's faith. *See generally* [#10]. I find that this is sufficient to state a claim against Defendant Woitte in his official capacity for violation of RLUIPA, and therefore recommend that the Motion to Dismiss be denied. *Cf. Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301 (KMK), 2018 WL 1626175, at *8 (S.D.N.Y. Mar. 30, 2018) (holding that Aramark was acting under color of state law when providing food service in a county detention facility); *Dotson v. Shelby Cty.*, No. 13-2766-JDT-TMP, 2014 WL 3530820, at *13 (W.D. Tenn. July 15, 2014) (collecting cases finding Aramark to be a government actor for food service provided in detention facilities).

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)   Defendant's Motion to Dismiss [#45] be **GRANTED IN PART and DENIED IN PART;**

(2)   Insofar as Plaintiff alleges a violation of RLUIPA against Defendant Stephen Woitte as an individual, such claim be **DISMISSED**;

(3)    Insofar as Plaintiff seeks compensatory damages against Defendant Woitte in his individual or official capacity, such claim for relief be **DISMISSED**; and

(4)    Insofar as Plaintiff seeks nominal damages against Defendant Woitte in his official capacity, such claim for relief be allowed to **PROCEED**.[8]

Additionally,

**IT IS ORDERED** that:

1. A Status Conference is set for **September 28, 2018 at 3:00 pm** in Courtroom A-502, 5th Floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. Please remember that anyone seeking entry into the Alfred A. Arraj United States Courthouse will be required to show valid photo identification. *See* D.C.COLO.LCivR 83.2(b);

---

[8] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

2. The Parties should be prepared at that time to discuss pretrial scheduling and discovery in this case; and

3. **In light of his failure to respond to the Motion to Dismiss, Plaintiff is specifically advised that failure to appear or otherwise contact the court for the Status Conference may lead to a Recommendation that this action be dismissed without prejudice for failure to prosecute.**

DATED:  August 14, 2018                    BY THE COURT:

_____
United States Magistrate Judge